IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TONY SAELEE,<br><br>Defendant. | Case No. 18-CR-199-CRB<br><br>**ORDER DENYING MOTION FOR A JUDGMENT OF ACQUITTAL, MOTION FOR A NEW TRIAL** |

In December 2019, Defendant Tony Saelee was convicted of attempted possession of MDMA with intent to distribute, and conspiracy to distribute and possess with intent to distribute MDMA. See Verdict Form (dkt. 103). He now moves for a judgment of acquittal or a new trial, arguing that (A) there was insufficient evidence to prove both counts; (B) the Court erred by declining to give a lesser included offense instruction; (C) the government's questioning led to the admission of un-Mirandized statements that the Court had ordered excluded; and (D) the Court also admitted other prejudicial evidence. See Mot. (dkt. 112) at 1. A judgment of acquittal is unwarranted, because a rational jury could have convicted—indeed, did convict—Saelee of both counts. Nor is a new trial warranted based on either the jury instructions or evidentiary rulings.[1]

**I. BACKGROUND**

Saelee was initially indicted in May 2018. See Indictment (dkt. 9). In July 2018, a grand jury charged Saelee with (1) violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846 — Attempt to Possess with Intent to Distribute a Controlled Substance; and (2) violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846 — Conspiracy to Distribute and Possess with Intent to

---

[1] The Court previously moved the hearing on this motion to June 10, 2020. The Court hereby VACATES the hearing on this motion, and will proceed with sentencing that same day.

Distribute a Controlled Substance. See Superseding Indictment (dkt. 19). The case arose because in April 2018, officers with the United States Customs and Border Protection at JFK Airport intercepted two parcels containing thousands of Ecstasy pills. Joint Pretrial Conf. Statement (dkt. 89) at 2. The pills were from a German sender and addressed to a "Tony Fin" in Richmond, California. Id. Homeland Security conducted an investigation, and determined that "Tony Fin" was in fact Saelee. Id. On April 23, 2018, Homeland Security did a controlled delivery of the parcels to Saelee's address, replacing the Ecstasy with fake drugs. Id. Saelee answered the door, said that he was "Tony Fin" and that he was expecting the packages, signed "Tony F," and took the packages inside. Id. Homeland Security agents then knocked on the door, announced their presence, arrested Saelee, and searched his apartment. Id. They found the packages in a room near Saelee's wallet, and seized ammunition from the same room. Id.

At the conclusion of a three day trial, the jury convicted Saelee on December 11, 2019, on both counts. See Jury Trial (dkts. 96, 98, 100); Verdict Form. He now moves for a judgment of acquittal or, in the alternative, a new trial.

## II. LEGAL STANDARD

### A. Rule 29 Acquittal Standard

Federal Rule of Criminal Procedure 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Evidence is insufficient to sustain a conviction if, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt. United States v. Nevils, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc).

### B. Rule 33 New Trial Standard

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Unlike with Rule 29, "[t]he court is not obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses." United States v. Kellington, 217 F.3d 1084, 1097 (9th Cir. 2000). If,

"despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred," the court may set aside the verdict and grant a new trial. Id. (citing United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980)).

## III. DISCUSSION

Saelee argues (A) that the Court should acquit him on Counts One and Two, because the government did not establish the alleged conspiracy. He argues next that he is entitled to a new trial, because: (B) the Court did not give a lesser included offense instruction; (C) the Court admitted an un-Mirandized statement that it had excluded pre-trial; and (D) the Court admitted additional prejudicial evidence. The Court rejects each of these arguments.

### A. Failure to Establish Conspiracy

Saelee argues first that the Court should acquit him on Counts One and Two "because the Government failed to independently establish the alleged conspiracy." See Mot. at 4. The conspiracy is the basis of Count Two (Conspiracy to Distribute and Possess), but not a part of Count One (Attempted Possession), and so this argument is a non-starter for Count One.[2] As to Count Two, however, Saelee argues that the government introduced the text messages from his

---

[2] There is ample evidence to sustain a conviction on Count One. Two packages containing nearly 3,000 Ecstasy pills, labeled as "Dokuments" and purportedly originating at a lawyer's office in Germany, were sent to "Tony fin," and the parties stipulated that the amount of Ecstasy was consistent with further distribution, not personal consumption. See Joint Stip. (dkt. 95) at 2. Saelee waited for the packages, identified himself as Tony Fin, and said that he was expecting the packages. Trial Tr. Vol. 1 (Witnesses) (dkt. 120) (Opp'n Ex. 2) at 48:18–49:3 (Rodriguez); 50:16–19; 74:1–7 (Thomas); Trial Tr. Vol. 2 (Opp'n Ex. 3) at 79:19–80:10 (Anderson). The Homeland Security officers then found the packages in a bedroom, a few feet from Saelee's wallet and fishing equipment. Trial Tr. Vol. 2 at 15:17–18; 20:13–19; 82:11-11; Trial Exs. 30–31. The messages between Saelee and Chai Chow Saechao are also compelling evidence on Count One. On April 17, 2018, about a week before the two packages were to be delivered, Saechao sent Saelee a message, saying "Hey tony I need some pills." Trial Ex. 46. Saechao testified at trial that he was requesting Ecstasy. Trial Tr. Vol. 2 at 42:13–43:3. This message disappeared from Saelee's Facebook account after his arrest. Trial Tr. Vol. 2 at 116:8–119:23. Saechao sent Saelee another message on April 18, 2018, asking for "100 tan bowers" and offering him "1100 for 100," which he testified was a request for 100 Ecstasy pills for $1,100. Trial Ex. 47; Trial Tr. Vol. 2 at 35:3–36:23, 38:2–4. Saelee's response was "Okay." Trial Ex. 47. The messages between Saelee and M.N. about the packages, discussed below, further support the guilty verdict on Count One. Viewing the evidence in the light most favorable to the prosecution, a rational jury could find that Saelee intended to possess the Ecstasy with the intent to distribute it to another person, and took a substantial step toward doing so.

3

roommate, M.N., claiming that M.N. was Saelee's coconspirator, but that other than these messages, there was no evidence to independently establish the conspiracy, violating Federal Rule of Evidence 801(d)(2)(E). Id. at 4–10. Saelee argues that "[h]ere the statements stand alone" and that "[t]here is no other evidence to show a conspiracy." Mot. at 6. He contends that "[w]ithout [M.N.'s] statements, there is no evidence that either Saelee or [M.N.] had any knowledge of a conspiracy nor any knowledge of the ecstasy at the heart of the conspiracy." Id.[3] Not so.

"A co-conspirator's statement is admissible against a defendant under the Federal Rules of Evidence if 'a conspiracy existed at the time the statement was made; the defendant had knowledge of, and participated in, the conspiracy; and the statement was made in furtherance of the conspiracy.'" United States v. Loya-Chavez, 3 F. App'x 628, 629 (9th Cir. 2001) (quoting United States v. Bowman, 215 F.3d 951, 960–61 (9th Cir. 2000); Fed. R. Evid. 801(d)(2)(E)). Whether the charged conspiracy existed, whether the defendant was a member of the conspiracy, and whether the proffered statement was made in the course of and in furtherance of the conspiracy are preliminary facts that the court must decide. See United States v. Perez, 658 F.2d 654, 658 (9th Cir. 1981). The government must establish such facts by a preponderance of the evidence. United States v. Silverman, 861 F.2d 571, 576 (9th Cir. 1988). "[W]hen the proponent of the co-conspirator's statement offers no additional proof of defendant's knowledge of and participation in the conspiracy, the statement must be excluded from evidence." Id. at 578. But "[w]here . . . some additional proof is offered, the court must determine whether such proof, viewed in light of the co-conspirator's statement itself, demonstrates by a preponderance of the evidence that defendant knew of and participated in the conspiracy." Id. (emphasis added). The additional evidence cannot be "marginally corroborative." Id. at 580. "While the government need show only a slight connection with the conspiracy," "the independent evidence must be 'fairly incriminating,'" meaning that "'[e]vidence of wholly innocuous conduct or statements by the defendant will rarely be sufficiently corroborative.'" United States v. Castaneda, 16 F.3d 1504, 1507 (9th Cir. 1994) (quoting Silverman, 861 F.2d at 578).

---

[3] He adds hastily that "Without [M.N.'s] statements, there is also insufficient evidence to establish Saelee's knowledge or intent for Count 1." Id. The Court rejects this argument out of hand.

4

Undeniably, the best evidence of Saelee's involvement in a conspiracy are the messages he exchanged with M.N. On April 21, 2018, two days before the controlled delivery, M.N. texted Saelee that a package was coming that day. See Trial Ex. 44; Trial Tr. Vol. 2 at 96:24–101:12. M.N. wrote, "We paying you," and instructed Saelee to keep an eye out for the packages. See Trial Ex. 44. Saelee agreed to set an alarm and leave his door open. Id. M.N. later told Saelee that the package was still in Oakland and would not arrive until Monday. Id. The government demonstrated at trial that within minutes of M.N. telling Saelee that the package was in Oakland, someone had checked the status of one of the packages using the unique tracking number; and in fact, the tracking information at that time would have shown that the package was in Oakland. See Trial Exs. 15, 16; Trial Tr. Vol. 1 (Witnesses) at 56:18–59:20; Trial Tr. Vol. 2 at 101:23–105:7. The government adequately demonstrated that M.N. was the one who checked the status of the packages. M.N. also sent Saelee a picture of bright yellow pills in a plastic bag, which Special Agent Anderson testified appeared to be Ecstasy. See Trial Exs. 44, 45; Trial Tr. Vol. 2 at 110:4–21; 124:8–17. That same day, M.N. asked Saelee whether anything had come, and Saelee responded, "Just hella mail. Did it said delivered?" Id. at 108:7–14.

While M.N.'s statements in the text exchange are hearsay that must meet the exception for coconspirator statements,[4] Saelee's are not. See United States v. Reed, 726 F.2d 570, 580 (9th Cir. 1984) ("'defendant's own statements are admissions wholly apart from the coconspirator exception and as such are admissible as nonhearsay'") (quoting United States v. Perez, 658 F.2d 654, 659 (9th Cir. 1981). Saelee's words—saying that he would set an alarm before the package arrived, saying that he would leave his door open to hear the delivery person, saying okay when told that the package was delayed two days, and asking "Did it said delivered" in response to M.N.'s inquiry about the packages (while not saying anything about the pills)—support the notion that he was a knowing participant in a conspiracy with M.N. When the packages that originally contained thousands of Ecstasy pills arrived via controlled delivery, Saelee received them, said

---

[4] The government adds that some of M.N.'s statements are independently admissible as commands. See Opp'n at 9; MIL (dkt. 62) at 2 n.1. The Court need not reach this argument as it concludes that the government has met its burden as to coconspirator statements.

5

that he was Tony Fin and that he was expecting the packages, signed for them and brought them inside. Trial Tr. Vol. 2 at 79:19–80:10. The packages (labeled falsely as documents from a lawyer's office and addressed to the alias Tony Fin) and the postal tracking records (searched by M.N.) further support M.N.'s statements.

The evidence involving Saechao also supports the existence of a conspiracy. Saelee agreed to sell Saechao 100 Ecstasy pills just days before the controlled delivery. Trial Ex. 47.[5] Saechao also testified that he had previously bought drugs from Tony through his partners at clubs. See Tr. Transcript of 12/10/19 (dkt. 108) at 65:7–8 ("His friends gave me the pill, but I know for myself it's coming from him."); 65:11–15 (Q. ". . . . So you're making requests of ecstasy from Tony's partners?" A. "Yeah." Q. "And they're giving you ecstasy?" A. "Yeah."); 65:20 ("I know it comes from him."); id. at 66:16–19 (A. ". . . . He give it to somebody else to give it to me, but I know it's his." Q. "Bottom line, you know it's Tony's ecstasy?" A. "Yeah. Yeah.").[6] Saelee's exchange with Saechao days before the Ecstasy at issue in this case was expected to arrive, and Saelee's practice of dealing Ecstasy to Saechao though friends/partners, both give context to the messages from M.N. about the important packages that were arriving.

The government did not rely on "'[e]vidence of wholly innocuous conduct.'" See Castaneda, 16 F.3d at 1507. It demonstrated by a preponderance of the evidence that "a conspiracy existed at the time [M.N.'s] statement[s were] made; [Saelee] had knowledge of, and participated in, the conspiracy; and [M.N.'s statements were] made in furtherance of the conspiracy.'" See Loya-Chavez, 3 F. App'x at 629. The Court therefore did not abuse its discretion by admitting M.N.'s statements. In light of Saelee's exchanges with M.N., and all of the other evidence, viewed in the light most favorable to the prosecution, the evidence was

---

[5] Saelee argues that this was an agreement to sell Saechao "a different type of ecstasy." Reply (dkt. 121) at 6. Viewing the evidence in the light most favorable to the prosecution, Saechao's request for a specific type of Ecstasy nonetheless supports the existence of a conspiracy to possess and distribute an unspecified type of Ecstasy. Moreover, a customer interested in discretion might send a message using a code word for a drug rather than saying "I'd like some Ecstasy," or might use such a code word if he does not know precisely what type of Ecstasy a dealer has on hand.
[6] The Court instructed the jury that Saelee was not on trial for distributing drugs to Saechao, and that the jury could not consider Saechao's testimony as "evidence of a separate offense." Id. at 66:21–25. Of course, that limiting instruction does not mean that Saechao's testimony was not relevant to the charged offenses.

6

sufficient for a rational jury to conclude that there was an agreement to distribute or possess with intent to distribute Ecstasy, and that Saelee joined in the agreement knowing of its purpose and intending to help accomplish it.[7]

The motion for acquittal is therefore DENIED.

## B. Lesser Included Offense Instruction

Saelee argues next that he is entitled to a new trial because the Court improperly declined to give his proposed lesser included offense instruction. See Mot. at 14–17. Saelee asked the Court to give an instruction on "simple possession of a controlled substance." See Proposed Jury Instructions (dkt. 73) at 58. He also requested that instruction at the charging conference. Trial Tr. of 12/10/19 at 169:2–6.[8] A court must give a lesser-included instruction where (1) "the elements of the lesser offense are a subset of the elements of the charged offense," and (2) "the evidence would permit a jury rationally to find [the defendant] guilty of the lesser offense and acquit [him] of the greater." United States v. Arnt, 474 F.3d 1159, 1163 (9th Cir. 2007) (quoting Schmuck v. United States, 489 U.S. 705, 716 (1989) and Keeble v. United States, 412 U.S. 205, 208 (1973)).

As the government pointed out pretrial, Saelee was not charged with possession with intent to distribute; he was charged with attempted possession with intent to distribute, and with conspiracy to distribute and possess with intent to distribute. See Superseding Indictment; Proposed Jury Instructions at 59. Saelee need not have possessed the Ecstasy in order to have committed either of the charged crimes. Simple possession is simply not a subset of the elements of those offenses, as the Court explained at the charging conference. See Trial Tr. of 12/10/19 at 169:15–17. Moreover, as the government points out now, "in this case, Saelee never actually possessed the Ecstasy pills from the packages—the pills were replaced with sham drugs before the delivery—yet he could be, and in fact was, still guilty of conspiring with his roommate to distribute and possess with intent to distribute those pills." Opp'n at 12. He therefore fails to

---

[7] The Court further holds that the admission of M.N.'s statements do not warrant a new trial.
[8] Saelee argues in his reply brief that the Court could have given an attempted simple possession instruction. See Reply at 15. Saelee never requested such an instruction.

7

meet the first prong of the test. Nor does he meet the second prong: the Court does not believe that a rational jury could have found Saelee guilty of simple possession while acquitting him on the charged crimes, given the significant evidence (such as the stipulation that the quantity was consistent with further distribution, the size and weight of the packages, which Saelee handled, and the evidence that Saelee was involved in dealing drugs) of his intent to distribute. See United States v. Nichols, 786 F. App'x 624, 628–29 (9th Cir. 2019) (affirming refusal to give simple possession instruction given "substantial and mostly uncontroverted evidence corroborating an intent to distribute.").

The Court's declination to give Saelee's lesser included offense instruction does not warrant a new trial.

### C. Un-Mirandized Statement

Saelee next argues that the admission of un-Mirandized statements so tainted the proceedings as to require a new trial under Rule 33. See Mot. at 20–23. Pretrial, the Court had excluded Saelee's un-Mirandized statement that the room the packages were found in was his bedroom. See MIL (dkt. 65); Motion Hearing 12/3/19 (dkt. 93). Notwithstanding that ruling, at trial, in response to the question "When you talk about a room identified as the defendant's room, what do you mean," an agent testified, "There was a room in the apartment that was the middle room between the other two I discussed. That room was identified as the defendant's room. He had his wallet in there and he said that—he told us that was his room." Trial Tr. Vol. I at 82–83. Defense counsel objected and move to strike, and, after a sidebar, the Court instructed the jury as follows:

> Okay. Ladies and gentlemen, there was some testimony, recent testimony, as to a statement made by the defendant. Because there was an understanding that no statements of the defendant are going to be admitted in this case, accordingly, you are—that statement is stricken and you are admonished to disregard it.

Id. at 83.

Saelee argues that "[t]here was no 'understanding'" and the Court's choice of language suggested that the defense might have bargained something away to hide something about Saelee,

8

"only further prejudic[ing] the defense." Mot. at 21–22. Saelee maintains that when a court admits an un-Mirandized statement, a conviction must be reversed unless the government has proven "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Id. at 21 (quoting United States v. Garibay, 143 F.3d 534, 539 (9th Cir. 1998)). The government has met its burden.

The Court has no reason to believe that the government deliberately solicited the trial testimony at issue. See Trial Tr. Vol. 1 at 82:21. The Court's use of the word "understanding" in its curative instruction was intended to be broad, and to convey to a jury of laypeople that Saelee's statement was not supposed to come in, without confusing them by describing the legal process by which the Court made that determination. Nor did the curative instruction prompt Saelee to object or move for a mistrial at the time. Courts "normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant." Greer v. Miller, 483 U.S. 756, 766 n.8 (1987) (internal citations omitted).

The government did not bring up the statement again. And there was other evidence that the packages were in Saelee's room. See Trial. Tr. of 12/10/19 at 15:11–12 (parcels in Room C); id. at 16:4–6 (fishing equipment in Room C); id. at 20:13–19 (Saelee's wallet and fishing equipment in Room C); Tr. Ex. 27 (photo of Room C). Moreover, there was no dispute that the packages were addressed to Saelee's alias, that Saelee accepted the packages during the controlled delivery, that he said that he was expecting them, and that he took them inside. Saelee's admission about his bedroom preserved his defense that he accepted delivery of the packages as a favor for his roommate but did not know what was inside of them. See Trial Tr. of 12/11/19 (dkt. 118) (Saelee closing argument) at 32:15–16 ("I think we'll all look at accepting packages differently after having the experience of this case.").

The admission of the un-Mirandized statement does not warrant a new trial.

### D. Additional Evidentiary Rulings

Finally, Saelee argues that the Court made a number of evidentiary rulings that constitute

9

cumulative error. See Mot. at 23–31 (citing United States v. Frederick, 78 F.3d 1370, 1381 (9th Cir. 1996) ("cumulative effect of multiple errors may still prejudice a defendant")). Again, the Court disagrees.

Saelee argues that the texts and messages he had with Saechao were not a part of the conspiracy and therefore only served to attack Saelee's character. Id. at 24–26. The text messages came just days before the controlled delivery and involved Saelee agreeing to sell over $1,000 worth of Ecstasy. See Trial Ex. 47. This was not character evidence—it was evidence of Saelee's contemporaneous involvement in drug dealing and his conspiracy with M.N., which is highly relevant.

Saelee also argues that the Court erred by admitting evidence that agents found ammunition in Saelee's apartment. Mot. at 26–29. The Court only admitted such evidence after Saelee cross-examined Agent Anderson about the controlled delivery, the number of individuals involved in the operation, and whether they were searching for weapons. See Trial Tr. Vol. 2 at 127:19–130:10 (series of questions about operation plan, ending with, "And you weren't searching for weapons or anything like that; right?"). Saelee's counsel argued at sidebar that "there were no weapons found and the officer wasn't expecting weapons to be there. . . . There's no history of Mr. Saelee having any guns." Id. at 131:19–23. As the Court explained at the time, "The ammunition was kept out because of its prejudicial effect being greater than its probative value," but that having raised the issue of weapons, defense counsel opened the door to the evidence of ammunition. Id. at 132:11–133:14.[9] The evidence of ammunition prevented the jury from being misled.

Lastly, Saelee argues that the Court erred in admitting photographs on Saelee's phone of his bank account, a wad of $100 bills, and a large bag of marijuana. Mot. at 29–31. The government noted at the time it introduced the photo of Saelee's retirement account included the words "Good morning, Tony," demonstrating that it was indeed Saelee's phone. See Trial Ex. 56;

---

[9] Saelee argues now that "Ammunition, unlike the guns that fire it, is not an inherently dangerous item." Reply at 8. If he is correct, then it is hard to see how Saelee could be prejudiced by reference to a non-dangerous item.

Trial Tr. Vol. 2 at 92:13–14. The photos of the money and marijuana were some evidence of Saelee's knowledge and intent with respect to his involvement in the drug trade, though they were not terribly significant evidence. See Trial Tr. Vol 2 at 93:2–21; Trial Exs. 58, 57. Moreover, the photos on Saelee's phone received only a passing reference at trial. Even without such evidence, the weight of the evidence against Saelee was overwhelming. See United States v. Kaur, 752 F. App'x 409, 410–11 (9th Cir. 2018) (any error in admitting evidence would be harmless because evidence of guilt was overwhelming).

The admission of the challenged evidence does not warrant a new trial. The motion for a new trial is therefore DENIED.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Saelee's motion.

**IT IS SO ORDERED.**

Dated: April 10, 2020

CHARLES R. BREYER
United States District Judge