`CHRISTOPHER J. CANNON, State Bar No. 88034
MATTHEW A. LAWS, State Bar No. 273697
Sugarman & Cannon
737 Tehama Street, No. 3
San Francisco, CA 94103
Telephone: 415-362-6252
Facsimile: 415-362-6431
chris@sugarmanandcannon.com

Attorneys for Defendant TONY SAELEE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | Case No. 18-cr-00199-CRB |
|---|---|
| Plaintiff, | **DEFENDANT TONY SAELEE'S SENTENCING MEMORANDUM** |
| vs. | |
| TONY SAELEE, | |
| Defendant. | |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ iii

I.     INTRODUCTION .................................................................................................................1

II.    THE GUIDELINES OVERSTATE THE SERIOUSNESS OF THE CONDUCT IN THIS CASE ........................................................................................................................................2

III.   A DOWNWARD DEPARTURE OR VARIANCE IS APPROPRIATE IN THIS CASE ............4

    A.    A Downward Departure or Variance is Appropriate Under 18 U.S.C. § 3553 ...................4

    B.    The Nature and Circumstances of the Offense and the Offender Indicate that a Sentence of Probation is Appropriate in this Case ................................................................6

    C.    Given the Conduct in this Case, a Felony Conviction is Sufficient to Deter Others ...........6

    D.    Probation is Available as a Sentence in this Case and Probation is an Appropriate Sentence in this Case. ..........................................................................................................7

    E.    There is Little Chance of Recidivism in this Case ..............................................................7

IV.   CONCLUSION......................................................................................................................8

# TABLE OF AUTHORITIES

**Cases**                                                                                         **Page(s)**

Kimbrough v. United States,
  552 U.S. 85 (2007) ................................................................................................................. 4

United States v. Booker,
  543 U.S. 220 (2005) ............................................................................................................ 4, 5

United States v. Cabrera,
  567 F.Supp.2d 271 (D. Mass. 2008) ...................................................................................... 3

United States v. Carty,
  520 F.3d 984 (9th Cir. 2008) .............................................................................................. 4, 5

United States v. Roth,
  32 F.3d 437 (9th Cir. 1994) .................................................................................................... 7

United States v. Sanderson,
  110 F.Supp.2d 1221 (N.D. Cal. 2000) ................................................................................... 3

United States v. Whitehead,
  532 F.3d 991 (9th Cir. 2008) (per curiam) ............................................................................. 6

**Federal Statutes**

18 U.S.C. § 3553 ......................................................................................................................... 4, 5

18 U.S.C. § 3553(a) .................................................................................................................... 4, 5

18 U.S.C. § 3553(a)(1), (a)(3), (a)(5)-(7) ........................................................................................ 5

18 U.S.C. § 3561 .............................................................................................................................. 7

**United States Sentencing Commission Guidelines**

U.S.S.G. § 3B1.2 ......................................................................................................................... 2, 3

USSG § 3B1.2(a) .......................................................................................................................... 2, 3

USSG § 5B1.1 ................................................................................................................................. 7

**Other Authorities**

https://www.ussc.gov/research/research-publications/2009-report-alternative-sentencing-
  federal-criminal-justice-system/downloaded 6/10/20 ............................................................ 5

Recidivism and the "First Offender" (May 2004), available at
  https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-
  publications/2004/200405_Recidivism_First_Offender.pdf ................................................. 7

## I. INTRODUCTION

Tony Saelee is a 31-year-old hard working citizen, who was 29 years old when the Department of Homeland security knocked on his door nearly two years ago and delivered two packages filled with sham ecstasy during a controlled delivery. Since the DHS first came to see him, Saelee has been successful during his pretrial release, maintained his job, worked on his sobriety, been a good father to his children and has not been accused of any other criminal activity.

There is no need for incarceration in this case because the goals of general and specific deterrence, punishment, and rehabilitation have been served.

Tony Saelee is a father of two children, ages 12 and 7. While Saelee's children live with their mother, Saelee is active in their lives and contributes financial support. Prior to the coronavirus quarantine, Saelee would travel to Sacramento to visit his children nearly every weekend.[1] No court has ordered Saelee to pay child support, yet he freely contributes approximately $500 per month. His children also receive healthcare through Saelee's Aetna healthcare plan, in which Saelee participates through his employment at Costco.

Tony began as a regular employee at the Richmond Costco 11 years ago. Seven years ago, he was promoted to a supervisory position. He is responsible for the scheduling of more than 100 people. His immediate manager knows of Tony's conviction. He is an essential person for Costco operations and is assisting Costco and its employees while they attempting to navigate state and county social distancing requirements and continue to provide groceries to the Richmond community.

His job at Costco has been extraordinarily complicated by the coronavirus epidemic. Tony has had to cope with larger crowds of customers, increased absenteeism by the employees he supervises, sending home employees with high temperatures, providing employees with masks, and making sure the shelves are full.

This case is Saelee's first, and only, criminal prosecution and there is no need to send him to prison.

---

[1] In-person visits with Saelee's children have ceased since the coronavirus quarantine because, as a Costco supervisor, Saelee interacts with large numbers of people and is concerned about exposing his children to a greater risk of contracting COVID-19.

DEFENDANT TONY SAELEE'S SENTENCING MEMORANDUM
Case No. 18-cr-00199-CRB                                                                                                      1

## II. THE GUIDELINES OVERSTATE THE SERIOUSNESS OF THE CONDUCT IN THIS CASE

Because the guidelines in this case are based upon the amount of drugs that Saelee received, and that amount was not known or controlled by Saelee, who simply agreed to act as a mailbox, the guidelines grossly overstate Saelee's criminal responsibility. Tony Saelee should get a four-level adjustment for a mitigating role under § 3B1.2(a) and an additional two-level adjustment under § 2D1.1(b)(17).[2]

Guideline section 3B1.2(a) reduces the offense level by 4 levels "if the defendant was a minimal participant in any criminal activity." A minimal participant adjustment is "intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group," and minimal participation may be indicated by a defendant's "lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others." U.S.S.G. § 3B1.2. cmt. n.4. Application Note 3(C) states the adjustment is dependent upon the facts of the case and that "the court should consider the following non-exhaustive list of factors:"

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
> (v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2. cmt. n.3. Application Note 3 further states that "a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline." Id.

Guideline section 2D1.1(b)(17) further reduces the offense level by 2 additional levels:

> If the defendant receives the 4-level ("minimal participant") reduction in §3B1.2(a) and the offense involved all of the following factors:
> (A) the defendant was motivated by an intimate or familial relationship or by

---

[2] Effective November 1, 2018, Amendment 807 redesignated subsections (b)(13) through (b)(17) in § 2D1.1 as subsections (b)(14) through (b)(18). U.S.S.G. Manual Vol. 2, 2018 Edition, Appendix C, Amendment 807. Cases prior to this amendment cite the prior subsection (b)(16) when discussing the current § 2D1.1 (b)(17) Specific Offense Characteristic and the applicability of its 2 level decrease.

DEFENDANT TONY SAELEE'S SENTENCING MEMORANDUM
Case No. 18-cr-00199-CRB                                                                                              2

> threats or fear to commit the offense and was otherwise unlikely to commit such an offense;
> (B) the defendant received no monetary compensation from the illegal purchase, sale, transport, or storage of controlled substances; and
> (C) the defendant had minimal knowledge of the scope and structure of the enterprise,

In United States v. Cabrera, 567 F.Supp.2d 271 (D. Mass. 2008), the defendant was a delivery man caught in a government sting. He had no role in setting up the deal, no role in negotiating price of the drugs, and no knowledge of where drugs were going. He was to receive $250 to $500 for drugs with a much greater value. He had no prior criminal record. The real purchasers got away. 567 F.Supp.2d 273-275. The district court determined the defendant "was simply a deliveryman caught in a web that others had created." Id. at 275.

In determining an appropriate sentence, the district court concluded that were two fundamental problems with the guideline approach - the over-emphasis on quantity and the under-emphasis on role in the offense. Drug quantity was not an accurate proxy for culpability. Id. at 276-77. Where the value or quantity of the drugs bore little or no relationship to the defendant's role and unfairly magnified the sentence, the district court held that a downward adjustment was appropriate under U.S.S.G. § 3B1.2. Id. at 277-78.

In United States v. Sanderson, 110 F.Supp.2d 1221 (N.D. Cal. 2000), the district court applied a 4 level decrease under USSG § 3B1.2(a) for a drug courier convicted based on evidence that he helped one coconspirator strap cocaine packages to two other coconspirators. Unlike Sanderson, the other men had previously engaged in smuggling activities, and Sanderson was given only menial tasks in the smuggling conspiracy. The district court acknowledged that without evidence, "it would be speculative to infer a more involved role." Furthermore, "although a defendant's 'lack of knowledge or understanding of the scope or structure of the enterprise and of the activities of others is indicative of a role as a minimal participant,' USSG § 3B1.2, comment. (n.3), such ignorance is not a prerequisite to minimal participant status." Sanderson, 110 F.Supp.2d at 1224 (N.D. Cal. 2000)(quoting United States v. Petti, 973 F.2d 1441, 1447 (9th Cir 1992)). The district court held that "Sanderson's general knowledge of the smuggling operation does not preclude the four-level adjustment the court deems appropriate." Id. at 1224.

Here, the evidence at trial showed overwhelmingly that Tony Saelee was simply accepting drugs for a roommate. He has no prior criminal record and there is no evidence Saelee would have been likely to commit a drug offense absent the request from his roommate. There is no evidence he ordered the drugs or profited in any way. There is no evidence Saelee had the intention or network to distribute the drugs, and nothing proved he had any knowledge of the scope and structure of the enterprise. Tony Saelee was simply a naïve fall guy for a roommate who wanted to import some ecstasy.

### III.  A DOWNWARD DEPARTURE OR VARIANCE IS APPROPRIATE IN THIS CASE

#### A. A Downward Departure or Variance is Appropriate Under 18 U.S.C. § 3553

In Booker, the Supreme Court held that district courts must consider the guideline range as advisory, not mandatory, and that they must also consider the other directives set forth in 18 U.S.C. § 3553(a). United States v. Booker, 543 U.S. 220 (2005).

Section 3553(a) requires courts to "impose a sentence sufficient, but not greater than necessary," to comply with the four purposes of sentencing set forth in Section 3553(a)(2):

> (A) retribution (to reflect seriousness of the offense, to promote respect for the law, and to provide "just punishment");
> (B) deterrence;
> (C) incapacitation ("to protect the public from further crimes"); and
> (D) rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner").

The sufficient-but-not-greater-than-necessary requirement is often referred to as the "parsimony provision." The parsimony provision is not just another factor to be considered along with the others set forth in Section 3553(a) – it sets an independent limit on the sentence a court may impose. Kimbrough v. United States, 552 U.S. 85, 101 (2007) (referring to the clause as an "overarching provision" that, post-Booker, "permits the court to tailor the sentence" to the individual defendant and crime in light of the goals of the Sentencing Reform Act of 1984). The overarching statutory charge for a district court is to "impose a sentence sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. 18 U.S.C. § 3553(a) and (a)(2). United States v. Carty, 520 F.3d 984 (9th Cir. 2008). "In this sense, the Guidelines are the starting point and the initial benchmark and are to be

kept in mind throughout the process." Id. (internal quotations and citations omitted). But the Court "may not presume that the Guidelines range is reasonable" and may not afford the Guidelines suggestion any more or less weight than the other section 3553 factors. Id.

The Sentencing Commission itself has recognized the need for alternative sentences that do not involve a prison term stating:

> Effective alternative sanctions are important options for federal, state, and local criminal justice systems. For the appropriate offenders, alternatives to incarceration can provide a substitute for costly incarceration. Ideally, alternatives also provide those offenders opportunities by diverting them from prison (or reducing time spent in prison) and into programs providing the life skills and treatment necessary to become law-abiding and productive members of society.

https://www.ussc.gov/research/research-publications/2009-report-alternative-sentencing-federal-criminal-justice-system/downloaded 6/10/20.

In this case, the available alternative sanction of probation is more than sufficient to satisfy the goals of sentencing, particularly because Saelee has no prior record a good employment history.

In determining if the sentence is minimally sufficient to comply with Section 3553(a)(2) purposes of sentencing, a court should consider several factors listed in Section 3553(a). These are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the kinds of sentence available;
> (3) the guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range;
> (4) the need to avoid unwarranted sentencing disparity; and
> (5) the need to provide restitution where applicable.

18 U.S.C. § 3553(a)(1), (a)(3), (a)(5)-(7).

Neither the statute itself nor Booker suggests that any one of these factors is to be given greater weight than any other factor. However, it is important to remember that all factors are subservient to Section 3553(a)'s mandate to impose a sentence not greater than necessary to comply with the four purposes of sentencing.

Here, all of the Section 3553 factors call out for a lenient sentence in this case.

//

//

### B. The Nature and Circumstances of the Offense and the Offender Indicate that a Sentence of Probation is Appropriate in this Case.

There are myriad reasons for a departure in this case. This is a first offense and Saelee had a minimal role. The guidelines, as calculated, grossly overstate the likelihood of recidivism. Because the guidelines in this case are based upon the amount of drugs that Saelee received, and that amount was not controlled by Saelee who simply agreed to act as a mailbox, the guidelines grossly overstate Saelee's criminal responsibility.

In United States v. Whitehead, 532 F.3d 991 (9th Cir. 2008) (per curiam), the Ninth Circuit affirmed a probationary sentence despite a guideline range of 41-57 months for creating counterfeit access devices, explaining that the district court had properly "[taken] into account its finding that Whitehead's [nonviolent] crime '[di]d not pose the same danger to the community as many other crimes.'" Id. at 993. This is also a nonviolent crime, and the ecstasy was not Tony Saelee's. Tony Saelee is a contributing member of the community, performing an essential in this time of a real pandemic. He does not pose a danger to the community, and taking him out of the community will negatively impact the community at large. Incarceration is not required to meet any of the goals of sentencing, and may actually have negative effects for society.

All of these factors should allow for a variance or a downward departure to a sentence of probation. Tony Saelee has been under supervision for since his arrest, has maintained employment and takes care of his children. Sending him to prison would serve no societal interest.

### C. Given the Conduct in this Case, a Felony Conviction is Sufficient to Deter Others

Tony Saelee was nothing more than a pawn that agreed to receive some packages. There is no evidence he had any further involvement in a drug distribution conspiracy. There is simply no need for incarceration to send a message to others. With a federal felony conviction on Saelee's permanent record, that message has been sent and heard. Tony has learned his lesson from two years of supervision and trial. His experience was a wake up call to Tony and all of those in his circle. There is no need for a custodial sentence. Moreover, if Tony is sentenced to prison, he may be eligible for home detention under Compassionate Release. Tony has no record and no history of violence. Cycling him in an out of prison will only increase the potential of spreading COVID-19. If the Court feels a period of restriction

on his liberty is needed for general deterrence, that could be provided through a period of house arrest which would allow Tony to continue to provide his essential services to Costco and the Richmond Community and to continue to provide health insurance for his children.

**D. Probation is Available as a Sentence in this Case and Probation is an Appropriate Sentence in this Case.**

There is no mandatory minimum applicable to this case and there is no statutory provision forbidding probation. While the probation report states that Saelee is not eligible for probation, that statement is based upon an advisory guideline. USSG §5B1.1. Saelee is statutorily eligible for probation under 18 U.S.C. § 3561. Moreover, even if there was a requirement of a prison sentence, and there is not in this case, only a de minimis term of imprisonment is required. See United States v. Roth, 32 F.3d 437, 440 (9th Cir. 1994).

**E. There is Little Chance of Recidivism in this Case.**

This is Tony Saelee's first and only criminal prosecution. As the PSR notes, "There is no evidence to suggest Mr. Saelee [has] significant ties to large-scale drug trafficking organizations, gangs, or cartels, and this offense did not involve any type of violence. Additionally, Mr. Saelee has no criminal history, and he has long-term stable employment and family responsibilities. Further, Mr. Saelee engaged post-offense rehabilitation by participating in substance abuse treatment to address his history of previously untreated alcohol and substance abuse." PSR at 14.

The United States Sentencing Commission's report, Recidivism and the "First Offender" (May 2004), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_First_Offender.pdf, suggests that individuals like Saelee, with zero criminal history points, are less likely to recidivate than all other offenders. Commission studies show that the recidivism rate for such individuals is substantially lower than recidivism rates for other offenders, and even for offenders with only one criminal history point. Id. at 13. The report notes that "the re-conviction recidivism rate for zero point offenders is 3.5 percent." Id. at 13, n. 25.

//

//

The events here were truly aberrant behavior for Saelee, there is nothing to indicate Saelee will find himself in trouble again, and the odds are well in Saelee's favor that he will not see another criminal prosecution. Moreover, as we indicated above, sending Saelee to prison will lead to the termination of his children's health insurance.

## IV.     CONCLUSION

Accordingly, we request this Court sentence Tony Saelee to probation. If the Court feels some detention is appropriate, that could be provided through a period of home confinement as a condition of probation.

Dated: June 11, 2020                                         Respectfully submitted,

                                                                                  /s/
                                                                   Christopher J. Cannon
                                                                   Matthew A. Laws
                                                                   Attorneys for TONY SAELEE